UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 09-10727-RWZ

LOCAL 791, UNITED FOOD AND COMMERCIAL WORKERS UNION, AFL-CIO

v.

SHAW'S SUPERMARKETS, INC.

MEMORANDUM OF DECISION

January 11, 2011

ZOBEL, D.J.

Plaintiff, the United Food and Commercial Workers Union Local 791 ("Local 791" or "Union") brings suit against Shaw's Supermarkets, Inc. ("Shaw's), under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA")[1] for violations of the parties' relevant collective bargaining agreements by failing to provide the contractually agreed medical, dental, and life insurance for employees on leave due to injury, illness, or for other reasons.

Now pending is defendant Shaw's motion for summary judgment (Docket # 26) pursuant to Fed. R. Civ. P. 56(b). For the reasons set forth below, the motion is allowed in part and denied in part.

---

[1] Section 301 of the LMRA provides, in pertinent part:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties.

29 U.S.C. § 185(a).

## I. Factual Background

Local 791 represents several thousand employees of Shaw's in stores and warehouses in Massachusetts and Rhode Island whose employment is governed by various collective bargaining agreements ("CBAs"). All CBAs contain provisions governing employer contributions for employee medical, dental, and life insurance benefits.

Local 791 brings suit on behalf of twenty-four employees whose medical, dental and/or life insurance coverage was terminated while they were on leave. Plaintiff claims that Shaw's violated these employees' rights under the CBA by denying them contractual benefits to which they are entitled.

## II. Legal Standard

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in his favor, no genuine issue of material fact remains. See Fed. R. Civ. P. 56(c); Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 684 (1st Cir. 1994).

To establish a claim under Section 301, an employee must demonstrate that the employer violated a collective bargaining agreement in force between the employer and the union. See Abdelmesih v. Waldorf-Astoria, No. 93 Civ. 4931 CSH, 1998 WL 740940, * 4 (S.D.N.Y. 1998). Interpretation of a collective bargaining agreement under Section 301 is a matter of federal common law. See Senior v. NSTAR Electric & Gas Corp., 449 F.3d 206, 216 (1st Cir. 2006).

### III. Analysis

#### A. Dental and Life Insurance

The governing CBAs obligate Shaw's to provide both dental and life insurance to employees. The Southern Region CBA has provided for company-paid life and dental insurance benefits for at least 30 years. In the late 1990s, the Methuen and Wells CBAs began providing employees with the option of dental insurance with weekly premium contributions from the employee. Employees who opted for this contractual benefit had the dental insurance premium contribution deducted from their paycheck.

Beginning in the late 1990s, the CBAs began requiring employees to pay a weekly premium for both dental and life insurance. As a matter of practice, from the late 1990s until 2007, when employees took a leave, Shaw's continued making dental and life insurance premium contributions. If an on-leave employee fell into arrears on his or her life insurance contribution, Shaw's waited until the employee returned to work before requiring the employee to repay any arrearage. In 2007, however, Shaw's stopped paying the employee insurance contributions while employees were on leave and began requiring employees to pay these premiums while still on leave. Shaw's terminated benefits for anyone who did not pay the premium.

Shaw's points out that the CBAs are silent on the question of its obligation in this respect, and it has not, therefore, violated the CBAs by canceling such insurance. Shaw's is correct. None of the CBAs contain any provisions requiring Shaw's to continue dental or life insurance for employees on leave, or in any way address whether those employees must pay premiums for life or dental insurance benefits

3

during their leave period. Therefore, plaintiffs cannot prevail on a Section 301 claim.

Local 791 relies on Shaw's long-standing practice of making such payments, and it further argues that the terms of the CBAs are ambiguous because they fail to address the issue. It suggests that the court look to extrinsic evidence — including bargaining history and the parties' custom and practice — to construe the contract. While the CBA is indeed silent on the issue of insurance coverage for employees on leave, it is not ambiguous, and thus custom and practice are not relevant. See American Postal Workers Union, AFL-CIO v. U.S. Postal Service, 940 F.2d 704, 707-08 (D.C. Cir.1991) ("[i]n the absence of ambiguity in the collective bargaining agreement, however, we have no cause to examine extrinsic evidence of the parties' intent"). Accord, Local 791, United Food & Commercial Workers Union v. Shaw's Supermarkets, Inc., 507 F.3d 43, 49 (1st Cir. 2007). Thus, Shaw's motion for summary judgment as to dental and life insurance is allowed.

### B. Medical Insurance

The CBAs also contain provisions obligating Shaw's to provide medical insurance to employees. Beginning in the late 1990s, the CBAs required employees on leave to pay a weekly premium for medical insurance. As a matter of practice, Shaw's continued the medical insurance for these employees. If an employee fell into arrears on his or her contribution for medical insurance, the company waited until the employee returned to work before requiring payment of the arrears. In 2001, the parties negotiated a provision in the CBAs which limited the amount of arrears employees could accumulate on their medical insurance premium contribution while on leave.

4

Since that time, all three CBAs provide:

> The Employer will continue medical insurance during leave, because of injury, illness or other related reasons, by making the appropriate payments to the Fund. If an employee on leave falls into arrears in their [sic] employee contributions for medical coverage, the Employer and the employee will arrange a payment plan acceptable to the Employer to pay back the unpaid contributions. If the employee is not current with a payment plan, and in arrears more than the "individual premium" or 12 weeks, whichever comes first, then the Employer may notify the Fund to cancel coverage.

See Article 10, Section 1(B)(14) of the 2008-2013 Southern Region CBA; Article 38, Section 1(B)(12) of the 2006-2010 Methuen CBA; and Article 39, Section 2(M) of the 2008-2013 Wells CBA.

Beginning in February 2009, Shaw's began canceling medical insurance of employees on leave who had fallen into arrears on their contributions and failed to contact Shaw's to arrange a payment plan. Shaw's points to the records produced in discovery which demonstrate that each employee whose medical insurance was terminated was in arrears.

Local 791 argues that Shaw's erroneously included unpaid life and dental insurance premium contributions in calculating the medical insurance continuation provisions. That is, under the CBAs, Shaw's was entitled to consider only unpaid employee contributions for medical coverage in determining whether an employee was "in arrears more than the 'individual premium' or 12 weeks, whichever comes first." Instead, by plaintiff's calculation, in at least three cases, it cancelled the employee's medical coverage when that employee was not in arrears on medical premium payments. See Docket # 33, Shaw's Appendix, Ex. 18 (Tracy Lynn Church); id. at Ex.

5

24 (David Gringas); and id. at Ex. 29 (Rose Nichols). Moreover, it is unclear from the record whether payments made by such employees were first applied to medical insurance contribution or were instead allocated to dental and life insurance contributions.

Shaw's argument misconstrues the CBAs, which expressly provide that in the event an employee falls into arrears, "the Employer and the employee will arrange a payment plan." (emphasis added). The plain language of the provision does not put the onus on the employee to contact Shaw's but rather contemplates a joint effort at arranging a payment plan. Moreover, there is a genuine issue of material fact as to the methodology used to calculate the arrearage. Accordingly, Shaw's motion for summary judgment with respect to medical insurance is denied.

## IV. Conclusion

Defendant Shaw's Motion for Summary Judgment (Docket # 26) is ALLOWED IN PART and DENIED IN PART.

|  January 11, 2011  |  /s/Rya W. Zobel  |
|---|---|
|  DATE  |  RYA W. ZOBEL<br>UNITED STATES DISTRICT JUDGE  |